ANTONIO VÉLEZ ALVARADO and RAMÓN VÉLEZ ALVARADO, Plaintiffs and Appellants, *v.* JUAN RAMÓN RAMOS ET AL., Defendants and Appellees.

No. R-63-300.     Decided May 20, 1968.

*Arturo Ortiz Toro, Manuel Abreu Castillo,* and *S. L. Lagarde Garcés* for appellants. *Héctor González Blanes* for appellees.

First Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, Mr. Justice Dávila, and Mr. Justice Ramírez Bages.

PER CURIAM: Ramón Vélez Alvarado brought before the former District Court of Arecibo, under number R-3443, an action against Juan Ramón Ramos and his wife, María Piñot, for revendication, nullity of conveyance, and other particulars.

He alleged in synthesis, that by virtue of several purchases he acquired a property of 378 cuerdas of land located in the ward Coto Norte of the municipality of Manatí; that while he was the owner and in possession of said property, the same was sold to Félix del Llano González, at a tax sale by the Internal Revenue Collector of Manatí, who issued a certificate of purchase on January 14, 1933; that subsequently and prior to January 10, 1935, the plaintiff agreed, through his attorney in fact, Antonio Vélez Alvarado, with Rafael Arcelay and his wife at that time, Consuelo Cabinero, that Rafael Arcelay would lend to plaintiff the sum of $4,170.19, so that the said Félix del Llano would convey the property directly to spouses Arcelay-Cabinero with the understanding that plaintiff would continue being the owner of said property, and to that effect, said Félix del Llano nominally conveyed the title of the property to said spouses by deed number one, executed on January 10, 1935, before Notary Francisco Fernández Cuyar, it being recorded in the Registry of Property of Arecibo as to an area of 320 cuerdas and registration denied as to 58 cuerdas, because they had not been recorded in favor of any person; but plaintiff continuing being the owner and usufructuary of the aforesaid property, through his attorney in fact, the aforesaid sum of money having been delivered by spouses Arcelay-Cabinero to Félix del Llano as a loan to Ramón Vélez Alvarado. It is also alleged that the property in question had an approximate value of $20,000.

In the fifth averment of the complaint it is also alleged that on May 9, 1934, and prior to that date, the plaintiff was the owner of a property of 78 cuerdas of land, which

is described; that the aforesaid property of 78 cuerdas was nominally conveyed to Rafael Arcelay by plaintiff, represented by his attorney in fact, Antonio Vélez Alvarado, and to secure a loan for the amount of $1,075 made by Arcelay to him, but that plaintiff continued being the owner and in the possession of said property.

In the seventh averment it is alleged that he also agreed with spouses Arcelay-Cabinero, through his attorney in fact, to convey under the same plan, nominally and as a collateral security, but with the understanding that he would continue in the possession and full ownership thereof, the parcels described in deed number one executed in Manatí on February 9, 1938, before Notary Francisco Fernández Cuyar, which are also described in the said seventh averment of the complaint under letters, a, b, c, d, e, and f; that the conveyance of said property was made nominally and to secure spouses Arcelay-Cabinero the sum of $2,000, all these parcels having a value of not less than $10,000 at the time of the conveyance.

In the ninth averment it is alleged that all properties described in the complaint were conveyed under the same plan to defendants Juan Ramón Ramos and María Piñot, by deed number 23 of March 20, 1940, executed before Notary Adolfo García Veve, and in which deed the defendant Juan Ramón Ramos consolidated all the properties purchased in a single property which was recorded in the registry under No. 2588 with a total area of 569.65 cuerdas; that since plaintiff owed to Rafael Arcelay about $12,000 of capital and interest by reason of the loans previously made and wishing to pay said debt to spouses Arcelay-Cabinero, the defendant Juan Ramón Ramos offered to give said amount to plaintiff, through the latter's attorney in fact, Antonio Vélez Alvarado, in the nature of a loan and they agreed that the plaintiff would convey the properties already consolidated as a security for that amount and interest at the rate of 7% annually, and

that the conveyance was nominally made for the purposes of collateral security, but that plaintiff continued in the possession and full ownership of the consolidated property; that the defendant Juan Ramón Ramos agreed that he would convey said properties to plaintiff as soon as the latter paid the amount of the debt with accrued interest; that the property was worth more than $30,000 at the time of the conveyance; that it was agreed that the plaintiff would continue in the possession, enjoyment, and exploitation of the consolidated property, through his attorney in fact, Antonio Vélez Alvarado.

In the thirteenth averment of the complaint it is alleged that plaintiff continued in the possession and enjoyment of the property and paid interest corresponding to the first three months, but that the defendant, as of that date, gradually introduced himself to the point of having occupied wrongfully the possession of the consolidated property against plaintiff's will, with the exception of 78 cuerdas which he also threatens to usurp; that the defendant has segregated from the consolidated property three parcels, one of 4.44 cuerdas transferred to the Municipality of Manatí, another of 9.25 cuerdas sold to the People of Puerto Rico, and another of 3 cuerdas sold to Juan Cortiella, and that all those three parcels were sold for the total price of $11,200.

In a second cause of action fruits and damages are claimed.

Defendants answered the complaint denying its essential averments and adduced several defenses. In one of these defenses they alleged that in March 1945, Antonio Vélez Alvarado filed a complaint for revendication against the same defendant under No. R-1618, in which he alleged the uncertain fact that said Antonio Vélez Alvarado was the owner of the property described in said complaint and that in July 1946, Antonio Vélez Alvarado himself filed another possessory action to recover and retain the possession of the

property described in the fifth averment of the complaint filed by Ramón Vélez Alvarado.

By order of the court the three cases were consolidated and by order of April 1948, the substitution of Antonio Vélez Alvarado by his heirs Antonio Vélez Tinajero and Dolly Cecilia Vélez, and his widow Cora Ramos, was decreed.

The hearing of these cases commenced on May 3, 1949, before the then District Judge Antonio Lens Cuena. After several hearings its continuation was left pending and during said interval Judge Lens Cuena became ill and died.

The hearing of the case was finally held before the trial judge. Abundant oral and documentary evidence was presented. The transcript of the testimony of some of the witnesses who had testified before Judge Lens Cuena was admitted. The deposition taken from witness Rafael Arcelay was also admitted.

The trial court rendered judgment dismissing the complaint in the three cases, after making the following

### "FINDINGS OF FACT

"1. That the property of 378 cuerdas described in the first averment of the complaint of case No. R-3443 at the date of the filing of said complaint belonged to Ramón Vélez Alvarado, who acquired it by virtue of different purchases, the last part purchased being the one described in deed No. 76 of August 3, 1909, executed before Notary José G. Torres.

"2. That the property to which the first averment set forth above refers was auctioned at a distress proceeding for delinquent property taxes to the state, it being awarded at the auction held for that purpose to the merchant of Manatí, Félix del Llano González, who offered $1,563.84 for it.

"3. That the auction was awarded to Félix del Llano González, who received the certificate of purchase from the Internal Revenue Collector of Manatí on January 14, 1933.

"4. That Félix del Llano González sold the property of 378 cuerdas which he had acquired at public auction, as related in the preceding second and third averments, to spouses Rafael

Arcelay and Consuelo Cabinero, for the sum of $4,170.19, by virtue of deed No. 1 of January 10, 1935, executed before Notary Francisco Fernández Cuyar.

"5. That on May 9, 1934, Antonio Vélez Alvarado, in his capacity of attorney in fact of his brother Ramón Vélez Alvarado, plaintiff in case No. R-3443, sold to Consuelo Cabinero, represented by her husband Rafael Arcelay, a property of 78 cuerdas located in the Ward Cotto of Manatí, as stated in deed No. 2, executed before Notary Rafael Palacios Rodríguez. This sale was carried out for the sum of $2,000, of which the purchasers paid to the vendor, Ramón Vélez Alvarado, through his attorney in fact, Antonio Vélez Alvarado, the sum of $950 and kept the sum of $1,050 to redeem in due time a mortgage which encumbered the property purchased.

"6. That on February 9, 1938, plaintiff Ramón Vélez Alvarado, represented by his attorney in fact, Antonio Vélez Alvarado, sold to spouses Arcelay-Cabinero parcels (a), (b), (c), (d), (e), (f), and (g), composed of 10 cuerdas, 15 cuerdas, 32 cuerdas, 20.98 cuerdas, 28 cuerdas, 7.67 cuerdas, and 70 cuerdas, respectively, the first six properties being described in the seventh averment of the complaint of case No. R-3443, as it all appears in deed No. 1 of same date, executed before Notary Francisco Fernández Cuyar.

"7. That all the properties or parcels above described in the foregoing sixth averment, which sum up a total of 183.65 cuerdas, were sold by plaintiff Ramón Vélez Alvarado, through his attorney in fact Antonio Vélez Alvarado, to spouses Arcelay-Cabinero for the total sum of $1,550, of which spouses Arcelay-Cabinero delivered to the attorney in fact of plaintiff Antonio Vélez Alvarado the sum of $500, and kept the sum of $1,050 to redeem a mortgage which encumbered in a like amount the property described under letter G, in favor of the young ladies Cecilia and Lucila Dávila.

"8. That in the aforesaid deed No. 1 it was stated, for the purposes of registration, the individual value of each property sold, as follows:

Property A — $150
"        B —   200
"        C —   200
"        D —   200

```
"      E —    150
"      F —     50
"      G —    600
```

"9. That spouses Arcelay-Cabinero sold all the properties which they had purchased from Félix del Llano González and from Ramón Vélez Alvarado, through his attorney in fact Antonio Vélez Alvarado on different dates, to defendants Juan Ramón Ramos and María Piñot, as stated in deed No. 23 of May 20, 1940, executed before Notary Adolfo García Veve.

"10. That all these properties were consolidated and became property No. 2588, with an area of 569.65 cuerdas.

"11. That subsequently, the consolidated property to which the foregoing tenth averment refers, was surveyed by engineer Carmelo Muñoz in June 1941, resulting with a total area of 351.13 cuerdas.

"12. That Rafael Arcelay took possession and began enjoying the property purchased by visiting the same and designating a majordomo named Del Valle, to manage and attend to it in his name.

"13. That Rafael Arcelay on some day between the years 1938 or 1939, filed a complaint under oath against Antonio Vélez Alvarado on the ground that the latter had ordered the cutting of poles of Arcelay's property without his authorization, the complaint being finally dismissed by virtue of the arrangement carried out with the intervention of the then Mayor of Manatí.

"14. That defendants, upon acquiring the properties of Rafael Arcelay and his wife, proceeded to take possession thereof, designating Juan Torres Perales as their majordomo in said properties.

"15. That defendant Juan Ramón Ramos, as soon as he took possession and control of the property purchased, he proceeded, through his majordomo Juan Torres Perales and laborers, to clean the property and repair the fences to mate cattle and to plant pasture, and in the same manner continued authorizing Antonio Vélez Alvarado, as the latter had been authorized before by Rafael Arcelay, to continue occupying the house where he had lived and to cultivate two small lots of land contiguous to the aforesaid house where there was cane planted which was cultivated by Antonio Vélez Alvarado and his wife Cora.

"16. That Rafael Arcelay had known Cora for a long time, since she lived in Santa Isabel and through her he met Antonio Vélez Alvarado, and since then they became friends.

"17. That Rafael Arcelay had acquired, besides the properties purchased from Félix del Llano González and from Ramón Vélez Alvarado, through his attorney in fact, Antonio Vélez Alvarado, another property of 138 cuerdas from the Banco Federal, where he cultivated grapefruit at 50% with Orestes Ramos.

"18. That about the middle of the year 1939–1940, Rafael Arcelay had decided to get rid of all his properties, including those he owned in the zone of the capital and offered the properties involved in this case to different persons.

"19. That among the persons to whom Rafael Arcelay had offered the properties in question for sale there was Antonio Vélez Alvarado with whom he talked telling him of his intention to sell his properties and asking Vélez Alvarado for the sum of $13,000 and the payment of taxes for said property.

"20. That Antonio Vélez Alvarado took some steps to obtain the money in order to buy the property and for that purpose on or about June 19, 1939, he filed an application for a loan with the Banco Federal for the sum of $12,000, stating under oath that the purpose of the loan was to buy a property of 378 cuerdas belonging to Consuelo Cabinero Arcelay, according to the application, which is the same property which belonged to Ramón Vélez Alvarado and which was acquired in a distress proceeding by Félix del Llano González, who later sold it to Consuelo Cabinero Arcelay.

"21. That Antonio Vélez Alvarado, attorney in fact of plaintiff in case No. R-3443 Ramón Vélez Alvarado, filed a complaint for revendication, nullity and other particulars against the defendant Juan Ramón Ramos, claiming a property of 192.40 cuerdas which had been acquired by Antonio Vélez Alvarado as gift from Dolores Vélez Escobar in 1892, and which had been sold at public auction for delinquent taxes and awarded to Juan Ramón Ramos. This action which bears No. R-267 of the former District Court of Arecibo, reached the Supreme Court of Puerto Rico on appeal.

"22. That Antonio Vélez Alvarado appeared in case No. R-1618 of the former District Court of Arecibo, on March 15, 1945, through his attorney Pedro E. Anglade, and filed an action

against Juan Ramón Ramos claiming the revendication and damages of the same property described in the first averment of the complaint in case No. R-3443.

"23. That in case No. R-1618 Antonio Vélez Alvarado alleged that he was the owner of the property which had been recorded with the description given when it was consolidated according to deed No. 23 of May 20, 1942, under number 2588, in the Registry of Property as belonging to defendant Juan Ramón Ramos.

"24. That in the second averment of case No. R-1618, consolidated with cases Nos. R-3443 and R-3381, for the hearing, Antonio Vélez Alvarado gave a different version from that given by him as attorney in fact of Ramón Vélez Alvarado in case No. R-3443, as to how the agreement with Félix del Llano González was carried out when the latter acquired the property at the auction sale.

"25. That likewise Antonio Vélez Alvarado, in case No. 1618, alleged having made a loan from Consuelo Cabinero Arcelay because he needed more money and alleged that he agreed with Félix del Llano González to transfer the property to Consuelo Cabinero Arcelay as security of the loan, for which reason Félix del Llano González conveyed the property to her name, but it being understood by both, Félix del Llano González and by Consuelo Cabinero Arcelay, that the property belonged to Antonio Vélez Alvarado.

"26. That in the fourth averment of case No. R-1618, plaintiff Antonio Vélez Alvarado alleges that the defendant in that case R-1618, and also the defendant in case R-3443, convinced him to convey in his name the property of 569.65 cuerdas for $12,000, which Juan Ramón Ramos paid to spouses Arcelay, but on the understanding that the property belonged to Antonio Vélez Alvarado.

"27. That in that same fourth averment in case No. R-1618, Antonio Vélez Alvarado alleges that defendant Juan Ramón Ramos would take possession of the property for payment of the interest, with the exception of the parcel of 80 cuerdas which plaintiff had for the cultivation of cane and other fruits.

"28. That case R-1618 remained filed in court without plaintiff taking any steps to continue it until it was revived by virtue of an order of November 21, 1950, entered by Judge Antonio

Lens Cuena and consolidated with cases Nos. R-3443 and R-3381, already mentioned.

"29. That in the month of July 1946, the Land Authority of Puerto Rico assessed the property in this case after it was consolidated and its area was reduced as a result of surveys carried out, in $14,000.

"30. That subsequently that assessment was increased to $20,000 because of the location of the property, which gave it an additional value to the one it had if its agricultural value was considered only.

"Witness Félix del Llano González testified twice in this proceeding. The first time before Judge Antonio Lens Cuena and the second time before this Judge. His testimony before Judge Lens Cuena was transcribed and the same appears at pages 69 to 149 of said transcript. That testimony, with which the witness was confronted, is defendant's Exhibit 21. Félix del Llano González also made a deposition at the request of the plaintiff and by order of the court. That deposition is plaintiff's Exhibit D of the hearing held before Judge Antonio Lens Cuena. This witness, Félix del Llano González, gave the impression of making an intense mental effort in search of the answers he had to give to the questions asked him. His recollection was not always good and a great perplexity to situate himself squarely on a categorical affirmation of essential facts is inferred from all his statements.

"Before this Judge the witness testified that Ramón Vélez Alvarado did not intervene in the sale of the property to Arcelay; that the $4,000 odd were paid by Antonio Vélez Alvarado; that when the deed was signed no money was delivered to him and that only the deed was signed; that he received nothing from Arcelay; that he received the money previously. To questions of defendant's counsel in his testimony before Judge Lens Cuena, he said: 'I received the money in Arcelay's office, in the presence of the three he gave me the money and I signed the deed of sale.' (Page 146 of the record.) When asked whether he sold to Arcelay under some restriction or condition, he answered: 'Nothing, without any restriction.' (Record, p. 146.) When defendant's counsel asked him: 'But you do know that Mr. Fernández Cuyar and Mr. Arcelay were present when you received the money?' He answered: 'Yes, sir.' (Record, p. 133.) The witness said further: 'I have never carried out business involv-

ing money transactions, money transactions with that gentleman, nor with Ramón nor with Antonio; I have never carried out transactions involving money.' (Record, p. 132.) When he was asked, 'Why? Why did you convey to Rafael Arcelay?' He answered: 'Because I received the money in the office, you understand, in the presence of the attorney, the Arcelays and Antonio Vélez Alvarado.' (Record, p. 118.) Mr. Ortiz Toro, after great effort in order to make the witness tell who delivered the money to him, asked him the following direct question: 'Did Antonio Vélez Alvarado pay you that money?' The witness answered: 'It might have been Ramón and it might have been Arcelay, because that is a question . . . at the time of doing it.' (Record, p. 101.)

"It is obvious that this witness, Félix del Llano González, had a great inability for making categorical statements. His contradictory manner of saying who delivered the money to him, since it is an essential fact in this case for the purpose of deciding clearly whether Arcelay made a loan to Antonio Vélez Alvarado or whether he merely paid the price of a purchase without any restriction, does not help the trier at all.

"The allegation on possible agreements between Arcelay and Antonio Vélez Alvarado, in his capacity of attorney in fact of Ramón Vélez Alvarado, so that Arcelay would return the property to Antonio Vélez Alvarado when the latter paid him his alleged loan with interest, cannot be established with this witness. Another direct witness of the alleged transaction would be Antonio Vélez Alvarado, and that witness did not testify. Arcelay, who testified by deposition, which is defendant's Exhibit 1, because he died, denied emphatically that version of the alleged loan. Plaintiff has presented also a series of circumstantial evidence to corroborate his contention.

"Félix del Llano González appears signing on December 31, 1934, what he affirmed was a liquidation he made to be delivered to Antonio Vélez Alvarado, when the latter gave him the sum of $4,170.19. That amount, according to that liquidation, is the whole sum owed to Del Llano González for the amount paid at the auction, the taxes paid by him while he was the owner of the property, plus the interest at the rate of 12% annually, on all those amounts for the corresponding years. We note that that liquidation which amounts exactly to $4,170.19, which was

what Félix del Llano González testified as having received when the property was conveyed to Rafael Arcelay, includes the taxes corresponding to the years 1930–31 and 1931–32, which were already included in the sum of $1,573.84 which the property owed on account of taxes until the very moment of the auction. Evidently the liquidation reveals an error of computation since in subtracting the interest computed on those payments not made by Félix del Llano González, the result is less than the amount to which Félix del Llano González would be entitled to claim.

"Plaintiff Ramón Vélez Alvarado, through his attorney in fact, Antonio Vélez Alvarado, alleges in the tenth averment of his complaint in case No. R-3443, that in May 1940 he owed Rafael Arcelay a sum of about $12,000, for capital and interest, by reason of the loans to which he has referred in his complaint and which were connected with all the properties recorded in the name of Rafael Arcelay. Those properties, when consolidated in deed No. 23 of May 20, 1940, yielded a total area of 569.65 cuerdas. If Arcelay had lent to Ramón Vélez Alvarado, through his attorney in fact in different loans the sum of about $12,000 and that was the reason why, as plaintiff alleges, the properties were recorded in his name, it being understood that the conveyance was nominal; why did Antonio Vélez Alvarado file an application for a loan on June 19, 1939, for the amount of $12,000 with the Federal Land Bank? According to that application, $10,000 would be devoted to purchase or reacquire the property of 378 cuerdas which had been sold at auction. And the rest of the properties which had been recorded in the name of Rafael Arcelay under the same understanding, were they not to be reacquired? Why were they going to pay $10,000 to Mrs. Arcelay for the property of 378 cuerdas, when she had only paid $4,170.19 and had possessed it from January 10, 1935, to May 20, 1940, five (5) years and four (4) months? If Mrs. Arcelay collected 7% on the loans she had made to Ramón Vélez Alvarado, the sum to be paid for that property of 378 cuerdas would be: (1) $4,170.19 which Félix del Llano González denies was the total of his credit, plus interest on that amount at 7% during five (5) years, which gives a total of $1,459.57, and (2) the taxes paid for all the properties approximately $425 in five (5) years with interest for a total of $2,571.25, which gives a grand total of $8,201.01. Antonio Vélez Alvarado, however, in

his application for loan was willing to pay $10,000 to acquire the property of 378 cuerdas only. He was going to invest the balance of $2,000 of the loan requested, as he testified under oath, in improvements and equipment for the property. In the application for loan no information is given in connection with the other properties. Also, in the part corresponding to encumbrances and debts of the applicant, no reference is made to any debt of the applicant to Consuelo Cabinero Arcelay.

"Plaintiff objected strongly to defendant's request for the Court to reinstate case No. R-1618. They objected also to the consolidation of the three cases R-3443, R-3381, and R-1618. Case No. R-1618 is an action which Antonio Vélez Alvarado brought directly against the same defendant in case No. R-3443. In that case No. R-1618, Antonio Vélez Alvarado alleges that the property described in the ninth averment of the complaint of case No. R-3443 and which has an area of 569.65 cuerdas belonged to him. Undoubtedly, that statement made by Antonio Vélez Alvarado in case No. R-1618 is not correct. There is the need, for the just determination of this case in which part of the evidence is of a circumstantial nature, to gauge the credibility of the agent representing the plaintiff Ramón Vélez Alvarado. Why did Antonio Vélez Alvarado have to allege, on March 19, 1945, that the property of 569.65 cuerdas belonged to him, and, a little over a year later, representing his constituent, allege that that same property belonged to Ramón Vélez Alvarado? Why did Antonio Vélez have to allege in case No. R-1618, that being in need of money he made a loan from Félix del Llano González, offering the property as security, and that then he, Antonio Vélez Alvarado and Félix del Llano González agreed that the latter would sell the property at public auction for delinquent taxes, when that version is not the same version given in case No. R-3443? Félix del Llano González has already sustained that he never had monetary transactions neither with Antonio nor with Ramón Vélez Alvarado. Why does Antonio Vélez Alvarado allege in case No. R-1618 that the defendant Juan Ramón Ramos told him that Arcelay could die and that he, Juan Ramón Ramos, could pay him his debt to Arcelay, provided the properties were recorded in his name, on the understanding that Juan Ramón Ramos would return them to him when Antonio Vélez Alvarado would pay him the $12,000, when in case R-3443, Antonio Vélez Alvarado himself offers us a

different version and introduces Orestes Ramos in the transaction? In our opinion there is a great contradiction in the allegations of cases Nos. R-1618 and R-3443. Those allegations are made by the same person: Antonio Vélez Alvarado.

"Antonio Vélez Alvarado set forth his last will in two testaments executed, the first one by deed No. 34 of May 14, 1941, in the city of Arecibo before Notary Isaías M. Crespo, and the second one by deed No. 12 of May 20, 1945, in the city of San Juan, before Notary Arturo Ortiz Toro. In the first will the testator alleges to be the owner of the property 'El Recurso' of more than 600 cuerdas in the ward Cotto Norte of Manatí. He states further, that that property is in the name of Juan Ramón Ramos, because the testator owes him the sum of approximately $12,000. In the second will, when the complaints of cases Nos. R-1618 and R-3443 had already been filed, nothing is said in connection with the property 'El Recurso.' In that second will the testator repudiates his former will. It is interesting that when the testator was five (5) years older and therefore was closer to his end, he repudiated that statement of being the owner of the property 'El Recurso.' It can be argued that since the complaints had already been filed it was not necessary to insist on the testamentary declaration. Neither in one nor in the other case the property 'El Recurso' belonged to him.

"Witness Orestes Ramos is mentioned for the first time in connection with the transaction between Antonio Vélez Alvarado and Juan Ramón Ramos of case No. R-3443. In case No. R-1618 the transaction was otherwise. Some proposed deeds were introduced in evidence as drafted by Notary Francisco Alvarado, Jr., concerning an alleged transaction in connection with the property of this case between Antonio Vélez Alvarado and Orestes Ramos. It is alleged that the transaction was not carried out because the Notary Francisco Alvarado, Jr., was the son-in-law of Rafael Arcelay and could not authorize the documents. Really, we do not give credit to that documentary evidence because evidently it is difficult to accept that a notary drafts proposed deeds in transactions where his father-in-law is involved. Rafael Arcelay has denied already in his statement that he had any transaction in connection with this property with Orestes Ramos, and he has also denied that his son-in-law, Francisco Alvarado, Jr., had drafted the proposed deeds which it is alleged he drafted.

If the alleged transaction between Antonio Vélez Alvarado and Orestes Ramos would have reached the point of having drafted the deeds and even of having affixed initials in the original of some of them, it would have been easy to correct the notary's ignorance by merely drafting the first page of each one of the deeds, especially when the date of execution is in blank.

"From the documents presented by the parties which we have examined, it appears that the property of this case, after it was surveyed by the engineers and surveyors of the Puerto Rico Land Authority, showed an area of 341.8981 cuerdas only. That survey was carried out on February 17, 1945. The Land Authority assessed that property in 1946, giving it a value of $21,410.63. According to that assessment the property had 110 cuerdas which are worth $5.00 per cuerda, and it only has 7.12 cuerdas which are worth $160 per cuerda, and 12.7541 cuerdas which are worth $150.

"Plaintiffs offered in evidence a great number of documents to establish that the plaintiffs cultivated cane in the properties they allege they possessed. There is no doubt that in said properties there existed the cultivation of cane, truck gardening, natural pasture, and underbrush. In 1928, as it is inferred from plaintiffs' Exhibit 28, all of 70 cuerdas were planted with cane. Since then, the crop began to decline and already by June 19, 1939, Antonio Vélez Alvarado himself informed in his application for loan to the Banco Federal and under oath, that he had 30 cuerdas of cane under cultivation. In 1948, there only remained 5 cuerdas of cane under cultivation. The appraiser of the Land Authority assessed the cane of those 5 cuerdas, of which 1.9 cuerdas had 5-crop seasons, and 3.1 cuerdas, one crop in the total amount of $61.70. That assessment is due to deficient cultivation and failure in timely applying the necessary fertilizer.

"Plaintiffs also introduced in evidence Exhibit No. 23, which is a contract signed by Antonio Vélez Alvarado and the Mayor of Manatí, on January 7, 1933. That contract concerns the authorization given by Antonio Vélez Alvarado to the Municipality of Manatí, to use a place in his property to throw the rubbish of that municipality. The contract is made for one year and there is no additional evidence that said contract was in force on the date on which defendant, Juan Ramón Ramos, acquired the properties in this case.

"Plaintiffs' evidence and particularly the averments of the complaint are driven to show that good friendship relations exist between the Arcelays and the attorney in fact of plaintiff, Antonio Vélez Alvarado, and his wife Cora Ramos. It was thus testified by Félix del Llano González when he said in his testimony before Judge Lens Cuena at p. 103, that when Antonio Vélez Alvarado paid him, he had told him that Arcelay and himself treated themselves as relatives. If that was the situation, and there is no other evidence seeking to indicate that Rafael Arcelay was the enemy of Vélez Alvarado and his wife, or that he aimed to obtain excessive profit, we do not understand how it is possible that Rafael Arcelay in his testimony denies in the most emphatic manner the averments on which the complaint in case No. R-3443 is based, and the testimonies of those witnesses. Arcelay testified that he had reached the point of filing a complaint against Vélez Alvarado and his wife, who were his friends, because the latter had ordered to cut some poles on the property which he had purchased from Félix del Llano González without his authorization, and that the complaint could be found in the Municipal Court of Manatí.

"Plaintiffs could have rebutted the fact, if it was not true, bringing a negative certificate from the Municipal Court of Manatí for that purpose. Can it be conceived that a man who has permitted that a property be nominally recorded in his name to secure a loan made by him, may act in that manner? If Antonio Vélez Alvarado and his constituent were the owners of the property, actually it is not possible to think that Rafael Arcelay could act so drastically.

"The witnesses, who allege having heard Juan Ramón Ramos talking to Antonio Vélez Alvarado in the latter's house about the business which finally was made by virtue of which Vélez Alvarado conveyed the property to him in exchange of the payment of $12,000 made by Juan Ramón Ramos to Rafael Arcelay, are relatives of the plaintiff's wife and it turns out that they heard different versions in connection with those conversations.

"There is evidence that the average cane per cuerda in these properties was 20 tons under good cultivation. There is evidence also that Antonio Vélez Alvarado lacked the economic means to cultivate adequately the small cane plantation he had. It was also established by the evidence that it was not a requirement to be the owner of the property in which cane was produced.

Plaintiffs' counsel made great efforts in procuring Rafael Arcelay to testify whether on some occasion he had signed any lease contract with Antonio Vélez Alvarado, and Arcelay denied categorically having made any such contract, and maintained that if there was any, he had not signed it. Plaintiffs did not insist on this point and that fact remained in the record without being rebutted by plaintiffs. Arcelay testified that he had allowed Antonio Vélez Alvarado to continue residing in the house which he had used for so long and that he had permitted him to cultivate cane and other crops in some small plots.

"Witness Arturo Centeno Martell testified on March 12, 1959. He said that he had inspected the property Cotto Norte with Mr. Arturo Ortiz Toro, seven or eight years prior to the date on which they testified and that they had not seen cane planted. There is evidence, however, introduced by plaintiffs (Exh. 17), that in 1953 Antonio Vélez Alvarado and his wife Cora Ramos continued cultivating the small plots of cane, which Arcelay first, and the defendant later, authorized them to cultivate. Angel Ramos testified that Arcelay told him that it was true what Antonio Vélez Alvarado said that he, Antonio Vélez Alvarado, owed some money to Arcelay on account of taxes. That would be a statement against the interest of Arcelay himself, but Rafael Arcelay has also testified (defendant's Exh. 1), that if he had made loans to Antonio Vélez Alvarado, the latter, who is an intelligent man, would have executed a mortgage as security for the loans. Undoubtedly, according to the documents offered in evidence by the plaintiffs, Antonio Vélez Alvarado was actually an intelligent man and although advanced in years, there is no evidence that he was decrepit. We give full credit to Arcelay's version, because it is more logically in keeping with the circumstances which contribute to clarify the truth in this case. Mr. Joaquín Velilla's testimony also reveals a fault which is not in harmony with the evidence as a whole. Witness Velilla tells us that Arcelay told him that he had obtained the property that he was going to sell to Orestes Ramos, at a distress proceeding and that he wanted the capital only, without interest. The record in this case shows that Félix del Llano González obtained at public auction the property of 378 cuerdas, which it is alleged Arcelay was going to sell to Orestes Ramos. Arcelay acquired it by purchase from Félix del Llano González, to whom the property was actually adjudicated at public auction. In the

second place, through all his testimony Arcelay shows an interest in obtaining profit from his money. Rafael Arcelay has told us that if he had lent money to Antonio Vélez Alvarado, the latter would have had to offer a mortgage in security. The plaintiff himself in his complaint alleges that he paid interest.

"Plaintiff's Exhibits 12, 13, and 14, Exhibits 12 and 14 are copies of alleged original deeds drafted by Notary Francisco Alvarado, Jr., and Exhibit 13 is the original of a deed also allegedly drafted by Notary Francisco Alvarado, Jr. In the copies (Exhs. 12 and 14) as well as in the original proposed deed (Exh. 14), the parties are the Arcelays and Orestes Ramos. By virtue of Exhibit 12, copy of the proposed deed No. 13 of the aforesaid notary, the Arcelays appear selling to Orestes Ramos the properties described under letters A, B, C, D, E, and F. The original of this Exhibit 12 was not presented by plaintiffs. However, an original of the proposed deed with the same number (3) of which plaintiffs' Exhibit 12 seems to be a copy, is identified (plaintiffs' Identification 2). Carefully compared, it is not a copy. The truth is that both plaintiff's Exhibit 12 and plaintiff's Identification 2 were allegedly drafted by Notary Francisco Alvardo, Jr., and the truth is that in Exhibit 12 the parties to the deed are the Arcelays and Orestes Ramos, while in plaintiff's Identification 2 the parties to the deed are the Arcelays and Antonio Vélez Alvarado. Plaintiff's Exhibit 13 is a proposed original deed drafted by Notary Francisco Alvarado, Jr., where the parties to the deed are the Arcelays and Orestes Ramos. Plaintiff's Identification 1 is another proposed original deed drafted by Notary Francisco Alvarado, Jr., where the parties to the deed are the Arcelays and Antonio Vélez Alvarado. Plaintiff's Exhibit 14 is a copy of the proposed deed No. 5 drafted by Francisco Alvarado, Jr., very similar in its wording to plaintiffs' Identification 3, which is a proposed deed No. 5, drafted also by Francisco Alvarado, Jr. In Exhibit 14 the parties to the deed are the Arcelays and Orestes Ramos, while in Identification 3 the parties are the Arcelays and Antonio Vélez Alvarado. Undoubtedly, Notary Francisco Alvarado, Jr., worked doubly and uselessly drafting all that work.

"All the evidence in this case is in the sense that the sale of the property Cotto Norte was made by the Arcelays to defendant Juan Ramón Ramos on May 20, 1940. All the alleged steps taken by the defendant to convince Antonio Vélez Alvarado

must have been carried out prior to that date. However, Paulino Castro Abalofia testifies that he accompanied Antonio Vélez Alvarado to Rafael Arcelay's house in Hato Rey and that when they arrived Juan Ramón Ramos was there; that Juan Ramón Ramos and Antonio Vélez Alvarado talked about the loan, Juan Ramón Ramos saying that he was willing to lend the money to Antonio Vélez Alvarado if he recorded the properties in his name. It all happened, according to Paulino Castro Abalofia's recollection, about the beginning of 1942. This witness' recollection is most unsatisfactory. He testified that they talked there about an original loan of $4,000 and other amounts which Antonio Vélez Alvarado was taking from Arcelay.

"Cora Ramos, widow of Antonio Vélez Alvarado, testified that in 1939 Arcelay told her husband to try to obtain the money in order to take the property, and that Antonio Vélez Alvarado began to procure the money in order to acquire the property; that he went to San Juan and they did not give him the money. With this the witness corroborates what Rafael Arcelay said, that he had offered the property to Antonio Vélez Alvarado. The witness also says that Juan Ramón Ramos told them to remain on the property. With this the witness corroborates Rafael Arcelay and the defendant, who testified that they had consented to allow Antonio Vélez Alvarado to remain on the property. She also testified that Antonio Vélez Alvarado paid $70 interest to Juan Ramón Ramos. In the thirteenth averment of the complaint of case No. R-3443, it is alleged that plaintiff paid interest for the first three months, but did not continue paying because the defendant began to introduce himself in the property and takes wrongful possession thereof.

"In the fourth averment of the complaint of case No. R-1618, Antonio Vélez Alvarado himself says, that as attorney in fact of Ramón Vélez Alvarado in case No. R-3443 the complaint reads that 'on the condition that in payment of the interest, the defendant would take possession of the property, except a parcel of some 80 cuerdas, approximately, that plaintiff has under cultivation of cane and other products.' Which of the two versions is the truth? In the complaint of case No. R-1618, the defendant takes possession of the property with the consent of Antonio Vélez Alvarado, in the complaint of case No. R-3443, the defendant usurps and takes illegal possession. Why, if it is true that three months after the defendant usurped and took

illegal possession of the property, breaching the agreement executed with the plaintiff, showing so early his ambition to take the property, was the action of case No. R-1618 not filed immediately alleging the truth? Why was the dismissal of that case No. R-1618 requested and case No. R-3443 filed a little over a year later with a different allegation as to the manner in which defendant took possession of the property?

"In view of the findings of fact and the foregoing, the court reaches the following:

### "CONCLUSIONS OF LAW

"1. That the sale made by Félix del Llano González to the Arcelays was a transaction by virtue of which he conveyed to the latter absolute title to the property of 378 cuerdas, said title being duly recorded in the registry in the name of the Arcelays.

"2. That the different transactions carried out between plaintiff Ramón Vélez Alvarado, through his attorney in fact Antonio Vélez Alvarado, and the Arcelays, were deeds of sale by virtue of which the vendees obtained absolute title to said properties, recording the same in their name in the registry.

"3. That the area of the property having been considerably reduced as it was consolidated in deed No. 23 of May 20, 1940, and the increase in the price of land in Puerto Rico having commenced after the year 1940, the price paid by the defendant Juan Ramón Ramos for the property he purchased by virtue of deed No. 23 of May 1940, was just and reasonable.

"4. That no Express Trust was agreed upon by the defendant and plaintiff through his attorney in fact Antonio Vélez Alvarado, by virtue of which the defendant, Juan Ramón Ramos, would commit himself and be bound in compliance with his commitment to return to plaintiff Ramón Vélez Alvarado, through his attorney in fact, Antonio Vélez Alvarado, the properties which he had acquired by virtue of absolute title of purchase.

"5. That the defendant took legitimate possession and control of the property purchased by virtue of valid title that he acquired from the Arcelays and from the very moment that the purchase was perfected.

"6. That even though it had been true that the agreement existed on the part of the Arcelays or the defendant spouses,

to restore the properties to their alleged owner, Ramón Vélez Alvarado, through his attorney in fact, Antonio Vélez Alvarado, the action to recover the properties sold had prescribed at the time when the complaint of case No. R-3443 was filed.

"7. That the action against spouses Arcelay or against defendant spouses would have prescribed also if the transactions alleged by the plaintiff in case No. R-3443 would have constituted an Express Trust." (Original Record, pp. 335–357.)

Appellants maintain that in this case a valid sale was never consummated between spouses Arcelay-Cabinero and the defendants, wherefore the acquisition of the property on the part of spouses Arcelay-Cabinero was not of an absolute and legal character, and they add that the conveyance of title to the Arcelay-Cabineros was only a manner of securing, on the part of the Vélez-Alvarados the debt they contracted with the Arcelay-Cabineros, as a result of the advanced payment made by the latter to Del Llano. "The juridical principles consecrated by this Court in the cases of *Fernández* v. *Laloma*, 56 P.R.R. 348; *Rodríguez* v. *Rivera*, 71 P.R.R. 269; *Monrozeau* v. *Amador*, 40 P.R.R. 124; *Ramírez* v. *Ramírez*, 65 P.R.R. 510; *Nieto* v. *Torres*, 56 P.R.R. 147, and *Rivera* v. *Goytía*, 70 P.R.R. 29 are applicable," they argue, "to all the evidence presented."

Let us examine these cases.

*Fernández* v. *Laloma, supra.*

In this case judgment was rendered on the pleadings at the request of defendant. The averments of the complaint were accepted as true. According to those averments, Miguel Echevarría Navarro borrowed the sum of $4,200 from Carmen Fernández Látimer to buy a house from Mr. Waldemar E. Lee. According to agreement the title was to be taken in the name of the debtor's sister, Josefa Echevarría Navarro until he had paid the debt. If he paid, his sister would convey title of the house to him. If he could not repay the purchase money, then Josefa Echevarría Navarro would convey title to the lender, Carmen Fernández Látimer. Title

in fee simple was recorded in the Registry of Property in the name of Josefa Echevarría.

Miguel Echevarría died insolvent without having paid the $4,200. The nominal owner, Josefa Echevarría, died also but she had executed a second will appointing as her sole heir the defendant Frances Laloma. In the complaint it had been alleged that Frances Laloma was aware that her predecessor had never been owner of the property. It was held that Josefa Echevarría and her assignees were agents both of the creditor as well as of the debtor and that in conveying the property to the heir instituted in the will, she exceeded the scope of the agency.

*Rodríguez* v. *Rivera*, 71 P.R.R. 269.

A deed of sale with right of redemption was executed. The vendor had uninterrupted possession of the property. A subsequent purchaser brought an action of unlawful detainer against her. It was held that the transaction had not been a sale but a mortgage loan for which reason since the defendant was the owner of the property the unlawful detainer was not proper. The transactions were recorded in the registry. The plaintiff failed to overcome the presumption *juris tantum* established by § 1410 of the Civil Code.

*Rivera* v. *Goytía, supra.*

In payment of attorney's fees, the heirs of José Goytía Alicea agreed verbally with the attorney that he would be given an undivided interest in one-half of a property of 10.36 cuerdas. Subsequently José Goytía, in whose name the property appeared recorded, conveyed it to his brother, Flor Goytía. In settling the conflict in the evidence as to the nature of this sale, the trial court held that said sale had been fraudulent and simulated. On appeal the judgment was affirmed.

*Ramírez* v. *Ramírez, supra.*

Two properties were transferred in favor of the husband

of Diluvina Ramírez Morales at the latter's request. The transfer was made in payment of hereditary shares of said lady. It was deemed as proved that her husband accepted and held the title of the property as trustee for the benefit of his wife. If it were held that said properties belonged to the conjugal partnership, the unjust enrichment at the expense of the plaintiff would be authorized.

The case was decided under the doctrine of the existence of a constructive or resulting trust and that of unjust enrichment.

*Nieto* v. *Torres, supra.*

Deed of sale of a property was executed to secure a loan. The vendor continued in possession and enjoyment of the property sold. The court did not admit evidence to show the real nature of the transaction. The judgment sustaining the complaint filed by the purchaser was reversed and the case remanded for further proceedings.

*Monrozeau* v. *Amador, supra.*

The lower court considered the private document possessed by defendants by virtue of which the property was conveyed to them with right of redemption as a mortgage given in security of a loan.

The difficulty in the contentions made by appellants lies in that the findings of fact of the trial court are sufficiently and substantially supported by the evidence admitted, and according to them the Arcelay-Cabineros were not agents of Antonio Vélez Alvarado, nor did they acquire the property in question in trust, nor was there an unjust enrichment or without consideration on the part of Juan Ramón Ramos. The facts as proved shall determine which is the applicable law and jurisprudential doctrine. Considering, therefore, the facts as proved in this case, we cannot apply the doctrines invoked by appellants.

Consequently, the judgment rendered by the Superior Court will be affirmed.